IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENTON L. C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-CV-260-JFJ |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Kenton L. C. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.    General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps

that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

II.     **Procedural History and the ALJ's Decision**

On January 11, 2018, Plaintiff, then a 47-year-old male, applied for supplemental security income benefits under Title XVI of the Social Security Act. R. 10, 217-25. Plaintiff alleges that he has been unable to work since an amended onset date of January 11, 2018, due to chronic back and knee pain, a right knee replacement, and dyslexia. R. 44, 238, 243. Plaintiff's claim for benefits was denied initially and on reconsideration. R. 112-39. ALJ James Stewart conducted an administrative hearing and issued a decision on September 19, 2019, denying benefits and finding Plaintiff not disabled. R. 10-22, 28-72. The Appeals Council denied review, and the ALJ's

3

decision represents the Commissioner's final decision for purposes of this appeal. R. 1-3; 20 C.F.R. § 416.1481.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his amended onset date of January 11, 2018. R. 12. At step two, the ALJ found Plaintiff's "degenerative disc [sic] disease of his bilateral knees post total knee replacement, degenerative disc disease of the thoracis spine, and degenerative disc disease of lumbar spine" were severe impairments. R. 13. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 13-14.

At step four, the ALJ summarized Plaintiff's hearing testimony, the medical source opinion evidence, and the medical evidence in the record. R. 14-20. He then found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a), with occasional stooping, crouching, kneeling, balancing, and climbing ramps or stairs, but no crawling or climbing ladders, ropes, or scaffolds. R. 14. Based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could not return to his past relevant work. R. 21.

At step five, the ALJ concluded that Plaintiff could perform other occupations existing in significant numbers in the national economy, including touch-up screener, film touch-up inspector, and semi-conductor bonder. R. 21-22. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 22. Accordingly, the ALJ concluded Plaintiff was not disabled. *Id*.

**III.   Issues**

Plaintiff raises three allegations of error on appeal: (1) the ALJ's RFC is not supported by substantial evidence because he failed to properly account for his need to elevate his feet; (2) the

4

ALJ's consistency analysis is not supported by substantial evidence because he failed to consider the applicable factors, to link his findings to the evidence, and to consider certain favorable evidence, and improperly relied on Plaintiff's history of workers' compensation and noncompliance to discount his symptoms; and (3) the ALJ failed to fully develop the VE's testimony. ECF No. 15.

IV. Analysis

    A. **ALJ Did Not Err Regarding Plaintiff's Need to Elevate His Feet**

Plaintiff argues that ALJ failed to properly account for his need to elevate his feet as indicated by nurse practitioner Rachelle Bradford, and as a result, the ALJ's RFC determination is not supported by substantial evidence. On August 8, 2019, Plaintiff presented to Ms. Bradford and reported, *inter alia,* burning and numbness in his feet after standing for prolonged periods of time for the past month. R. 517. Ms. Bradford's neurological examination of Plaintiff was normal, showing full muscle strength, a normal gait, normal sensation, and normal deep tendon reflexes. R. 519. Ms. Bradford assessed Plaintiff with neuropathy, placed a consult for "podiatry," and recommended that Plaintiff elevate his feet and take frequent resting periods, noting if Plaintiff's symptoms continued, she would "talk about starting [G]abapentin." *Id.*

In discussing the severity of Plaintiff's impairments at step two, the ALJ concluded that Ms. Bradford's neuropathy diagnosis was not found anywhere else in the record, was unsupported by objective evidence, and was inconsistent with her own neurological examination. R. 13. Although the ALJ did not identify neuropathy as a medically determinable impairment, he nonetheless included a discussion of it as part of the RFC analysis. R. 13, 20. In assessing the RFC, the ALJ found Ms. Bradford's advice that Plaintiff elevate his feet was "clearly not

5

durational," and even if it were, such limitation was not supported by the medical evidence of record, including Ms. Bradford's own examination. R. 20.

Plaintiff specifically asserts that the reasons the ALJ provided for rejecting Ms. Bradford's opinion regarding Plaintiff's need to elevate his feet are not supported by substantial evidence. For claims filed on or after March 27, 2017, 20 C.F.R. § 416.920c provides that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a).[2]  Instead, the ALJ need only articulate how persuasive he finds each medical source's opinion. 20 C.F.R. § 416.920c(b). Persuasiveness is based primarily on an opinion's supportability and consistency, and the ALJ must explain how he considered those two factors. 20 C.F.R. § 416.920c(b)(2).[3] The ALJ may, but is typically not required to, discuss other considerations that may affect the persuasiveness of a medical opinion, such as the source's relationship with the claimant, the source's area of specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 416.920c(b)(2)-(c). Additionally, an ALJ is required to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved" and to explain why he did not adopt a medical opinion that

---

[2] In adopting the revised rules, the Social Security Administration explained: "To account for the changes in the way healthcare is currently delivered, we are adopting rules that focus more on the content of medical opinions and less on weighing treating relationships against each other. This approach is more consistent with current healthcare practice." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, at 5854, 2017 WL 168819 (Jan. 18, 2017).

[3] For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2).

conflicts with the RFC assessment. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7.

In this case, although the ALJ seemed to question whether Ms. Bradford's treatment advice was a medical source statement, he nonetheless evaluated it as though it were. R. 20. The ALJ first concluded that Ms. Bradford's advice for Plaintiff to elevate his feet was "clearly not durational." *Id.* Since Ms. Bradford's recommendation is included in a section of her treatment note labelled "Plan" under the heading "2. Neuropathy," it is readily apparent that her advice for Plaintiff to elevate his feet was part of her treatment plan for Plaintiff's neuropathy. R. 519-20. As the ALJ correctly noted at step two, Ms. Bradford made the only neuropathy diagnosis in the record in August 2019. R. 13, 519-20. Additionally, Plaintiff reported at the August 2019 appointment with Ms. Bradford that he had been experiencing burning and numbness in his feet for one month (*i.e.*, since July 2019). R. 517. Because Ms. Bradford's elevation advice was based on a diagnosis first appearing in the record in August 2019, and because the ALJ issued his decision the following month, his conclusion that Ms. Bradford's elevation advice was not durational is supported by substantial evidence.

Despite excluding neuropathy from Plaintiff's medical determinable impairments and finding Ms. Bradford's elevation advice not durational, the ALJ continued with his analysis, noting that even if Ms. Bradford's elevation advice met the 12-month durational requirement, it was nonetheless not supported by the medical evidence of record. In reaching this conclusion, the ALJ correctly noted that Ms. Bradford's August 2019 examination showed Plaintiff had a normal gait, normal strength, no joint swelling, no tenderness or effusion in his right knee, and full range of motion in his right knee. R. 20. Elsewhere in the opinion, the ALJ also correctly noted that Ms. Bradford's neuropathy diagnosis was unsupported by "sensory testing such as monofilament or

EMG" and found "nowhere else in the record," and that her August 2019 neurological examination of Plaintiff was normal. R. 13. The Court thus finds that the ALJ adequately considered the consistency and supportability of Ms. Bradford's elevation advice and his decision to exclude an elevation limitation from the RFC assessment is supported by substantial evidence. *See Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (affirming the ALJ's rejection of a treating physician's opinion where the ALJ "set forth a summary of the relevant objective medical evidence earlier in his decision," and the ALJ "was not required to continue to recite the same evidence again in rejecting [the] opinion.").

B.   **ALJ's Consistency Analysis Was Supported by Substantial Evidence**

Plaintiff contends that the ALJ erred in evaluating his symptoms, specifically arguing the ALJ did not consider the relevant factors, failed to link the consistency findings to the evidence in the record, failed to consider certain evidence showing he had "great credibility," and improperly discounted his symptoms based on his worker's compensation case and noncompliance. ECF No. 15 at 8-12.

In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2016 WL 1119029, at *7. If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor;

8

the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. § 416.929(c)(3).[4]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (cleaned up). The ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." SSR 16-3p at *10.

The Court finds no error in the ALJ's consistency analysis. The ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 18-19. In reaching this conclusion, the ALJ discussed several inconsistencies between Plaintiff's subjective complaints and the evidence of record, including: (1) Ms. Bradford's June 2018 physical examination showing tenderness of Plaintiff's bilateral paraspinal muscles and painful palpable lumps on his right knee, but a normal gait, normal muscle strength and tone, no joint swelling, and no erythema, edema, or effusion; (2) the normal right knee imaging in July 2018 and May 2019;

---

[4] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

9

(3) Plaintiff's August 2018 discharge from physical therapy for his lumbar spine having met all goals and reporting no pain before or after treatment; (4) Ms. Bradford's normal physical examinations of Plaintiff in October 2018, November 2018, February 2019, and July 2019; (5) Ms. Bradford's May 2019 physical examination showing extension in Plaintiff's back to 20 degrees without difficulty, flexion to 10 degrees with some minor pain in the center of his back, and lateral bending without pain; (6) the unremarkable thoracic spine MRI in June 2019; (7) a June 2019 physical therapy consult showing cervical, thoracic, and lumbar range of motion within normal limits; (8) the normal cervical spine MRI in July 2019; (9) Plaintiff's June 2019 report to Ms. Bradford that his neck hurt only when he sleeps on a pillow or turns his neck a certain way; (10) Dr. Seals' July 2019 treatment note "strongly" advising Plaintiff to pick up his Gabapentin and start taking it; (11) Plaintiff's July 2019 discharge from physical therapy having met 4/5 of his long term goals and all of his short-term goals, and reporting no thoracic spine pain; and (12) Ms. Bradford's August 2019 physical examination showing some nodular areas on Plaintiff's right knee incision, but no effusion or tenderness, and full range of motion.  R. 14-20.

Plaintiff asserts that the ALJ failed to consider the factors in 20 C.F.R. § 416.929(c)(3). However, so long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (cleaned up).  "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*. As set forth above, the ALJ provided numerous reasons, supported by the record, for finding Plaintiff's symptoms were not as severe or functionally limiting as alleged.  Thus, contrary to Plaintiff's assertion, the ALJ linked his consistency findings to the evidence and provided clear

and specific reasons for his determination in compliance with the directives of *Cowan* and SSR 16-3p.

Plaintiff also asserts that the ALJ failed to consider certain evidence showing Plaintiff had "great credibility," including his five knee surgeries; treatment by specialists; prescription pain medication; and "willingness to do whatever his medical provider's suggested," as evidenced by his surgeries and participation in pain management and physical therapy. This is not borne out in the ALJ's analysis. The ALJ discussed Plaintiff's pain management treatment, prescription medication, physical therapy, and October 2018 consultation with orthopedic surgeon Dr. Bradford Boone. R. 15-20. Although the ALJ did not recount all of Plaintiff's right knee surgeries, he clearly considered Plaintiff's right knee replacement because he identified it as a severe impairment and accounted for it in the RFC determination. R. 13, 121-23, 135-37. The ALJ was also aware of the surgeries that preceded Plaintiff's total knee replacement because Plaintiff testified at the administrative hearing that he had undergone five surgeries for his right knee. R. 50. The ALJ then asked if any of the surgeries had been "since the replacement" and Plaintiff replied "No." *Id.* This is sufficient consideration of the evidence identified by Plaintiff as supporting his credibility. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").

Plaintiff further asserts that the ALJ erred in discounting his subjective symptoms based on his noncompliance with prescribed treatment. In his opening brief, Plaintiff argues that the ALJ's conclusion concerning noncompliance was not supported by substantial evidence because he "merely forgot to pick up [his] medication once." ECF No. 15 at 12. However, the record contains additional evidence of Plaintiff's noncompliance, including his own report in March 2018

11

that he had never taken Gabapentin regularly.  R. 380.  Therefore, the Court rejects this argument.  In his reply brief, Plaintiff appears to abandon his original argument and argues instead that the ALJ relied on Plaintiff's noncompliance to deny benefits without determining whether such treatment, if followed, would restore his ability to work or considering whether he had good cause for not following the prescribed treatment, as required by SSR 18-3p.  Although the Court has no obligation to consider arguments first raised in a reply brief, *see Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, 777 F.3d 1132, 1142 (10th Cir. 2015) (party waives issues and arguments raised first time in reply brief), the Court will also address this argument.  Plaintiff's reliance on SSR 18-3p is misplaced.  This ruling only applies if certain conditions are met, including a finding by the ALJ that the claimant "is entitled to disability benefits . . . regardless of whether the individual followed the prescribed treatment."  SSR 18-3p, 2018 WL 4945641, at *3.  In this case, the ALJ concluded that Plaintiff remained capable of performing a range of sedentary work even though he did not always take his medication as prescribed.  Thus, the requirements of SSR 18-3p do not apply here.  *See Autumn G. v. Kijakazi,* No. 20-1206-JWL, 2021 WL 3488394, at *5-6 (D. Kan. Aug. 9, 2021) (holding SSR 18-3p does not apply where the ALJ found Plaintiff not disabled "even when Plaintiff is not following prescribed treatment").  Moreover, the ALJ did not rely on noncompliance as an independent basis to deny disability benefits; rather, he considered noncompliance as an adverse factor in evaluating Plaintiff's subjective symptoms.  *See Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000) (distinguishing between denial of benefits for failure to follow prescribed treatment and the ALJ's evaluation of failure to seek treatment as part of the consistency analysis); *see also Johnson v. Colvin,* 640 F. App'x 770, 774 (10th Cir. 2016) ("[W]hen, as here, noncompliance with prescribed treatment is invoked not as an independent basis for denying disability but only as a factor diminishing the credibility of a claimant's

allegations of the severity of symptoms prompting treatment, the ALJ need not also find the foregone treatment would have restored the claimant's ability to work.").

Plaintiff also asserts that the ALJ improperly relied on his history of workers' compensation to discount his subjective symptoms. Although the ALJ's use of Plaintiff's history of workers' compensation benefits to discount his subjective symptoms is questionable,[5] the decision makes clear that the ALJ did not base his consistency analysis on Plaintiff's workers' compensation history alone. As set forth above, the ALJ provided numerous other reasons supported by the record to discount Plaintiff's subjective symptoms and the balance of his consistency analysis is thus supported by substantial evidence. *See, e.g., Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004) ("While we have some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores, we conclude that the balance of the ALJ's [consistency] analysis is supported by substantial evidence in the record.").

      **C.**    **ALJ Did Not Err in analyzing the VE Testimony**

Plaintiff asserts that the ALJ erred by failing to discuss the VE's testimony in response to a hypothetical question that included limitations greater than those assessed in the RFC. At the administrative hearing, the ALJ posed a hypothetical question to the VE that matched the RFC assessment set forth above, and the VE identified three sedentary jobs a hypothetical person with the same age, work history, and education as Plaintiff could perform: touch-up screener, film touch-up inspector, and semi-conductor bonder. R. 69-70. The ALJ then presented a hypothetical question that modified the standing/walking limitation to "about" 1 hour per day and the sitting limitation to "intermittently" for no more than 4 hours per day, with the remainder of the day spent

---

[5] At the administrative hearing, the ALJ acknowledged that the Commissioner no longer considers a claimant's receipt of workers' compensation benefits "under the new evidence rules." R. 42.

on unscheduled breaks of indefinite duration, resting in a reclining or other position as necessary to alleviate chronic pain or elevate lower extremities. R. 70. The VE testified that the hypothetical person with such limitations would be precluded from employment. R. 70-71.

Plaintiff's argument is without merit. The ALJ is not required to exhaustively analyze VE testimony regarding limitations that the ALJ did not ultimately adopt. *See Clifton,* 79 F.3d at 1009-10 ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). To the contrary, hypothetical questions to the VE "must reflect with precision all of [the claimant's] impairments, but they need only reflect impairments and limitations that are borne out by the evidentiary record." *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir. 1996). As set forth above, the RFC crafted by the ALJ was supported by substantial evidence. Thus, to the extent Plaintiff's arguments regarding the VE's testimony are based on the RFC, they similarly fail. *See Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir. 1990) (holding that the ALJ is not bound by a VE's opinion in response to a hypothetical question that includes impairments the ALJ has not accepted as true). Accordingly, the Court finds no error in the ALJ's analysis of the VE's testimony, and such testimony constitutes substantial evidence supporting his decision. *See Qualls,* 206 F.3d at 1373 ("We have already rejected plaintiff's challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

V.  **Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 5th day of November, 2021.

JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT